# THE CAPITAL CITY GASLIGHT COMPANY v. THE CITY OF DES MOINES, Appellant.

**Construction of Contract.** A city and a gas company agreed as follows: If improvements shall materially diminish the cost of gas production and shall be adopted in other cities or shall be ordered by the council, the company shall introduce them and reduce the price of gas accordingly. *Held,* the city is not entitled to reduction because such improvements have been put in, unless it shows that a *material* reduction in cost has been accomplished by them, that the improvements have been adopted in other cities or ordered by the council.

**SAME.** The contract provided that after three years the city might discontinue lamps in the business section if it deemed it expedient to substitute electric lights; also, the council might, if it deemed it necessary or expedient, discontinue lamps temporarily or permanently. *Held,* there is no right to discontinue lamps outside of the business section *for the purpose of substituting electric lights;* especially where the city so construed the contract, before suit.

**"Business Section" Defined.** It is that part of a city mainly and chiefly devoted to business purposes or uses, where stores, factories, offices, and shops and the like, predominate; where for convenience, business usually concentrates itself. The existence of drug stores, groceries, feed stores, barber shops, meat markets, and the like, in a locality generally or largely used for residence, and maintained for the trade of the locality rather than for the needs of the public generally, does not make a "business section."

**Practice.** Where the defendant serves notice that it proposes to do a certain thing, it cannot complain that a charge was refused, based upon the theory that it was not its purpose to do that thing.

**SAME.** Where parties go to trial without obtaining a ruling on demurrer, it is error to sustain the demurrer; but it is harmless, where other acts of the court are in harmony with the ruling on the demurrer, and held proper.

**SAME.** It is harmless to strike out matter which presents no issuable facts.

**SAME: EXCESSIVE VERDICT.** Where the excess is not merely nominal, it will warrant reversal.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

MONDAY, JANUARY 28, 1895.

Action to recover damages for the violation of a contract. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*J. K. Macomber* and *A. P. Chamberlain* for appellant.

*Cummins & Wright* for appellee.

Kinne, J.—I. The plaintiff is a corporation organized under the laws of this state and has for many years been engaged in the business of manufacturing and distributing gas in the defendant city. On January 9, 1885, defendant city entered into a contract with plaintiff in the form of an ordinance, and that part material to this controversy is as follows:

"Sec. 4. In consideration of the privileges herein granted to the said Capital City Gaslight Company and its assigns the Capital City Gaslight Company agrees to bind itself and assigns to and with the city of Des Moines by the acceptance hereof to furnish the said city, for use in public lamps, buildings and offices, wherever the main pipes may be extended, all the gas the city may use in such lamps, buildings and offices for the term of ten years. The price of gas for public buildings and offices shall be two dollars per thousand feet, and for each public or street lamp, it shall be two dollars per month, payable monthly. *  *  *

"Sec. 5. The said Capital City Gaslight Company and its assigns shall furnish posts, service pipes and lamps for public lights, each of which lamps shall be

provided with a burner that will consume four feet of gas per hour, and shall keep them in repair and good order, and shall light and extinguish such lamps as follows, to-wit: The lamps shall be lighted one-half hour after sunset and one hour before moonset, and extinguished one hour before sunrise and one hour after moonrise, except when the condition of the weather may render street lights necessary; then they are to be kept burning all night. And the city of Des Moines on its part agrees to take from the said Capital City Gaslight Company or its assigns all the gas the said city may require for use for public lamps, buildings and offices, or for any purpose, for the period of ten years, and to pay therefor at the rates and in the manner above stipulated. Provided, however, that if at any time after three years from the taking effect of this ordinance the city council shall deem it expedient or economical to light the public buildings or any portion of the business section of the city by any form or modification of the electric light, said council may order the discontinuance of all or any of the lamps along the streets in said business section, or in the public buildings, and shall not be held to pay for any lights so discontinued. And provided further, that said city council, if it shall deem it necessary or expedient to discontinue a portion of the public lamps now in existence, may order the same discontinued temporarily or permanently, and the city shall not pay for any lamps so discontinued."

"Section 8. That if any discovery or improvement has been or shall be made in the manufacture of illuminating gas from coal or other material, either fluid or solid, by which the cost of manufacturing the same shall be materially diminished and the same shall be adopted in other principal cities of the country, or shall be ordered by the council, then

in such a case the company aforesaid shall introduce such discovery or improvement in said city of Des Moines, and make such deductions in the price of gas as shall be effected by such discovery or improvement."

Under this contract the plaintiff company extended its mains, erected its lamp-posts, and proceeded to furnish the defendant city with gas. Acting, as is claimed, within the provisions of said ordinance, the defendant city, through its proper officers, on September 29, 1891, notified the plaintiff, in writing, to discontinue the lighting of one hundred and eighty-seven street lamps after the thirtieth of September, 1891. On November 2, 1891, the city served a like notice as to seventeen other street lamps. On December 2, 1891, the city served upon the company a like notice as to one hundred and seventy-five additional street lamps. The plaintiff company protested against the discontinuance of a large number of the lamps thus ordered to be discontinued, and announced its intention to claim damages therefor; but under protest it dismantled these lamps, as it claims, and on December 15, 1891, commenced this action for the recovery of damages which it claimed to have sustained by reason of the refusal of the city to permit it to continue to furnish gas to the lamps which were ordered discontinued, and which it claimed were not within the business section of the city. It is claimed in the petition that, of the three hundred and seventy-nine lamps so ordered to be discontinued, two hundred and thirty-three were, under the provisions of said ordinance, wrongfully ordered discontinued. The defendant city filed its answer, in which it claims—First, that the lamps discontinued were within the business section of the city; second, that, under the provisions of the ordinance, the city had the right, at pleasure and without restriction, to discontinue the lamps. Other matters were pleaded,

some of which presented issues which were withdrawn from the jury, and of which ruling no complaint is made. Still other issues were submitted to the jury under instructions of the court, not now complained of, and we do not now deem it necessary to more fully refer to them. If material in the further progress of the case to do so, they will be found set forth under the proper divisions of this opinion. A demurrer was interposed by plaintiff to some of the counts of the answer, which will hereafter be considered. Plaintiff in a reply denied the material averments of the answer. The cause was tried to a jury, and a verdict returned for plaintiff for eight thousand and twelve dollars and thirty-five cents. The jury returned a verdict for the defendant upon its counterclaim for one dollar. It also returned a special finding to the effect that, of the lamps mentioned in the petition as discontinued, two hundred and twenty were ordered out which were outside of the business section of the city. Judgment was entered in favor of plaintiff for eight thousand and eleven dollars and thirty-five cents, from which defendant appeals.

II. It is first contended that the verdict and special findings were contrary to the evidence, and that the verdict was excessive. It is said that recovery was had for lamps not embraced within the petition, and for lamps which the city had not ordered to be discontinued; and it is insisted that in the special finding of two hundred and twenty lamps there was erroneously included by the jury fifty-two lamps. The disagreement of counsel touching this matter has imposed upon us the burden of investigating the transcript as to each lamp in question. The labor thus cast upon the court has been materially, and we think quite unnecessarily, increased by the preparation of a transcript without any index, thereby requiring us to search through about

two hundred pages of typewritten matter to find certain items of testimony. Appellee urges that in determining the question thus presented we should not only consider the testimony of the several witnesses, but also the plat or map introduced in evidence, and which locates and numbers all discontinued lamps. This we have done. The record discloses the fact that the city introduced a map also, but it appears not to have been sent up. After a painstaking investigation, we have arrived at the conclusion that as to the following lamps, which were embraced in the petition, and were ordered discontinued by the city, no evidence was offered which would justify a recovery on account of said discontinuance, viz.: 58, 81, 82, 83, 178, 179, 186, 187, 188, 190, 191, 192, 244, on the west side of the river; and 520, 521, 574, 575, 576, 577, 585, 586, 587, 588, 589, 593, 595, 597, 598, 613, 614, 615, 617, 618, 619, 620, 621, 622, 624, on the east side of the river,—making in all thirty-eight lamps. We also find that six hundred and twenty-four is claimed twice, which would show that thirty-nine lamps in all were erroneously embraced in the two hundred and twenty found by the jury to be outside of the business section, and which finding as to said thirty-nine lamps is not sustained by the evidence. True, some of the witnesses for plaintiff describe a business section which would embrace a few of these lamps, but, treating all lamps upon the streets which are given as constituting the boundaries of the business section as being embraced within said boundaries,—which, we think, in view of the evidence, we may properly do,— we find that all of the above-described lamps are within the business section of the city as bounded by the plaintiff's manager, the witness Mr. Pratt, and hence, under plaintiff's own view of the ordinance, no recovery can be had by reason of their discontinuance. Again, Mr. Pratt testifies that the map of the city shows the

gas lamps ordered to be discontinued, and "the red circles are lamps discontinued outside of what we consider the business section of the city." This map is Exhibit No. six. An examination of this exhibit shows that none of the lamps above referred to are designated by a red circle, and hence it may well be presumed, in the light of this testimony, that they were not to be considered or treated as being outside of the business section of the city. These lamps, then, are in this situation: They are not designated on the map as being lamps claimed to be outside of the business section of the city. They are shown by the testimony of plaintiff's manager to be within what he claims should be the boundary of the business section of the city. We do not think there was any evidence as to these lamps which would warrant a jury in finding them to be outside of the business section of the city, and to that extent the special finding was erroneous. The facts touching this matter are rendered difficult to arrive at with certainty, because in the trial of this case the principal witness, Pratt, in his testimony, described a large number of lamps which had been ordered out by the city, and which are, as we understand it, the basis of other suits against the city. So the map shows all lamps ordered out by the city, whether embraced in this action or in subsequent suits. In view of this condition of the evidence, it is not surprising that the jury were led astray to the extent of considering and treating lamps which are unquestionably within the business section of the city, as defined by plaintiff's manager, as being without such section. This excess in the verdict being not nominal, but a large amount, the judgment for that reason alone must be reversed.

III. The defendant complains of the action of the court in refusing to give the following instructions:

"If, by the introduction of discoveries or improvements in the manufacture of gas, plaintiff has reduced the cost of such gas, then plaintiff is bound to make such deductions from the price to be paid by the city as may be effected thereby; and if you find that such discoveries and improvements have been introduced, and have diminished the cost of manufacture, and that the plaintiff has not made proper deductions in price on account thereof, then you will make, in estimating the damages, a proper deduction therefor." This instruction is based upon the provisions of the eighth section of the ordinance heretofore set out. To render that section available to the defendant, it must be made to appear—

First, that an improvement or discovery of the character contemplated in the section has been made; and, second, that such discovery or improvement has materially reduced the cost of manufacturing gas; and, third, that same has been adopted in other principal cities of the country, or that it has been ordered by the city council. We do not think any such discovery and improvement, as is contemplated by this section, has been shown to have been made; but, even if it had, it is not shown that such discovery or improvement has materially reduced the cost of making gas, nor does it appear that it has been adopted as required or ordered by the city council. In other words, there was no evidence justifying the giving of the instuction.

IV. On the day this case was called for trial plaintiff demurred to counts two, three, four and five of the answer. In the absence of any ruling thereon, the parties proceeded to trial, and at the conclusion of the evidence plaintiff substituted a motion to strike in lieu of one ground of its demurrer, and asked a ruling upon both motion and demurrer. The defendant contended that, by going to

trial without a ruling, plaintiff had waived its demurrer. The court, however, sustained both motion and demurrer, to which ruling defendant excepted. Appellant concedes that, if the record be as above set forth, it waived its demurrer, or its right to have the same ruled upon. In an amendment to the abstract, appellee shows that by agreement of counsel the ruling upon the demurrer was postponed until the conclusion of the evidence. This amendment is denied, and we find nothing in the transcript furnished us showing that such an agreement was made. We conclude, therefore, that the court erred in ruling upon the demurrer and motion. As to the motion, however, it may be said that the ruling was without prejudice, as the matter stricken out contained no issuable fact, and was merely a conclusion of the pleader. The result must have been the same whether the motion had been sustained or overruled. As to the demurrer, it raised the same questions as arise upon the instructions given and refused, and, as the court in both cases took the same view of the law, it is manifest that the error in ruling at all upon the demurrer worked no prejudice to the defendant.

V. Defendant asked the court to give the following instructions, and the refusal to give them is assigned as error: "(1) You are instructed that the defendant would have the right to discontinue, without incurring any liability, any of plaintiff's gas lamps outside of the business section of the city, at any time when said lamps become unnecessary, or are, in the opinion of the city officers, no longer needed; provided, that such discontinuance is not made for the purpose of substituting lights of another kind from lamps located outside of such business section. (2) If, by reason of the establishment of electric or

other lamps within the business section of the city, any of plaintiff's gas lamps outside of the business section are rendered no longer necessary, or are deemed by the city officers no longer necessary, then the city would have the right to discontinue such gas lamps, and plaintiff cannot recover therefor. (3) The contract only binds plaintiff to furnish all the gas the city may use, and only binds the city to take all the gas the city may require for public lamps. If the city, therefore, shall determine that it does not desire to use gas for lighting its streets, or any of them, it may discontinue any gas lamp without liability; but, if the city should replace such lamp with a lamp lighted by gas not furnished by plaintiff, then plaintiff would be entitled to recover therefor." "(7) You are instructed, by the terms of the contract, plaintiff only acquired the exclusive right to furnish gas for street lighting, and that the city has the right to substitute for gas lamps any kind of light except gaslight outside the business section, and within the business section to substitute only electric lights." The first instruction asked was properly refused, as it was inapplicable to the issues presented to the jury. The notices of discontinuance which were served upon the plaintiff contain a statement that the city deemed it expedient and economical to light the streets and parts of streets therein described with electric lights. There could then be no claim in this case that any lamps were discontinued finally, for the city expressly stated its purpose in discontinuing the lamps to be to substitute in lieu thereof electric lights. The instruction was therefore not pertinent to the issues. The question for the jury under the issues was not the right of the city to discontinue gas lamps absolutely outside of the business section of the city, but its right to discontinue such lights or lamps, and to substitute in place thereof

electric lights.    What we have said is also applicable
to the second instruction asked and refused.    The
third and seventh instructions asked and refused pre-
sent the defendant's theory of the relation, duties, and
obligations of the defendant under the ordinance in
question.    The construction placed by the court upon
the ordinance in that respect is found in the following
instructions, which were given to the jury, and to the
giving of which defendant excepted:    "The city
has, and had when this controversy arose, the
right to discontinue gas lamps in the business
section of the city, and to substitute for them electric
lights; but it neither had nor has the right to discon-
tinue such lamps, and substitute electric lights, in any
other section than the business section.    One of your
first inquiries will be, what is the 'business section' of
the city of Des Moines?    And it is the duty of the court
to inform you what these words, 'the business section,'
mean as used in the contract before you.    The business
section of the city is that part which is mainly and
chiefly devoted to business purposes or uses.    It is
that part in which stores, factories, offices, shops, and
the like predominate.    The word 'business' is here used
in contradiction from the word 'resident' or 'dwelling,'
or 'vacant' or 'unoccupied.'    The great majority of
men have one place in which they perform their daily
labor, and another in which they live,—their homes.
For convenience, business usually concentrates itself,
and the place or area of such concentration is the 'busi-
ness' section of a city.    On the contrary, the homes or
residences of the inhabitants spread themselves over a
wide area, and the latter is the 'residence' section of a
city."    "(3)    You are instructed that the existence of
places of business, such as drug stores, groceries, feed
stores, barber shops, meat markets, and the like, estab-
lished for the trade of the particular locality, rather

than because of the needs of the public generally, if they are in the midst of a locality generally or largely devoted to and used for residences, does not make such a locality a part of the business section; and a boarding house is as much a residence as though it were occupied by a single family. The final test is this, how is the property chiefly and mainly used? If for business, then it is the business section; if for residences, churches, schools, or the like, then it is not in the business section. (4) Governed by the foregoing construction of the contract, you will next proceed to ascertain how many of the gas lamps, if any, that were discontinued by order of the city prior to the bringing of this suit, were not within the business section of the city; and if you find any such gas lamps were not within such business section as herein defined, and that they were discontinued for the purpose of substituting electric lights, then the city has violated its contract, and the plaintiff is entitled to recover whatever damages it has shown with respect to such lamps, and its damages, if any, are to be ascertained as pointed out in the following instructions." The claim of the city is that under the ordinance it did not agree to use gas for street lighting, except for three years, within the business section of the city; that it bound itself only to the extent that it would not use gas furnished by persons other than the plaintiff. It had the right, without limitation or reservation, under the ordinance to discontinue public street lamps whenever it chose so to do, or, at least, whenever it deemed it expedient or economical so to do, and, if outside of the business section of the city, to substitute therefor any light except gas, and within the business section to substitute only electric lights. The contention of the plaintiff is that the city agreed to take of plaintiff all the gas necessary for lighting its

streets and public buildings, and pay therefor the sum stated in the ordinance. That this obligation was subject to only two exceptions: First, that if, after three years, the city council believed it to be more economical to light the business section of the city with electricity, it might do so, and order the gas lamps within said territory to be discontinued; and, second, that, if for any cause the city should desire to discontinue the lighting of any particular street or locality, it might discontinue the lamps in said territory, but could not, outside of the business section of the city, discontinue gas lamps for the purpose of substituting another form or kind of street lighting. The instructions given by the court properly followed plaintiff's construction of this ordinance. The provisions of the ordinance in this respect are so plain as to admit of no doubt as to their meaning. The right of the council, after the expiration of three years from the time of the taking effect of the ordinance, was absolute to discontinue lighting public buildings, or any portion of the business section of the city, with plaintiff's gas, if it did so for the purpose of lighting the same with electric lights. Its right to discontinue a portion of the street lamps, either within or without the business section of the city, temporarily or permanently, and without substituting in place thereof the same or other forms or kinds of lighting in lieu of plaintiff's gas, is clear. If defendant's contention be correct, that it could at pleasure, and at any place, discontinue the plaintiff's gas lamps, and substitute in lieu thereof any other form or kind of street lighting, then the provision of the ordinance touching the discontinuance of lamps within the business section, and the substitution therefor of electric lights, was wholly unnecessary, and is without force and effect. Such contention cannot

obtain, as it ignores a fundamental rule of construction which requires courts in construing contracts to, if possible, give force and effect to all of the provisions of the contract. We cannot assume that the language of the first proviso was intended to be meaningless and without force, unless such a conclusion is a necessary result of the wording of the entire ordinance. If a construction can be placed upon the contract which will give all parts of it force and effect, and at the same time is in accord with the well-settled rules of construction, it must obtain, rather than one which would render a part of the contract inoperative. Again, it is proper to look to the acts of the parties at a time when there was no litigation, to ascertain what view they had held as to their obligations under the contract. As we have said, the notices of discontinuance informed the plaintiff that the reason the city ordered the lamps discontinued was that it might substitute in lieu thereof electric lights. Now, if the officers of the city, at the time they ordered these lights discontinued, in the fall of 1891, believed that they had the right, under the contract, to discontinue all gas lamps of plaintiff, wherever located, there would have been no reason for exercising their right, as they attempted to do under the first provision heretofore spoken of, wherein the city is given the right of substituting electric lights in the business section. The idea evidently then obtained that the city council could order all gas lamps within the business section discontinued if they substituted therefor electric lights, and they construed the "business section" to embrace any place where any business was carried on. The action of the city officers then taken is not in harmony with the contention now made by the city. We have, then, a case where the meaning of the words used is plain, and in accord with the construction placed

thereon by the District Court, and that is the same construction placed upon the ordinance by defendant's officers when they served their notices of discontinuance. It is urged that the court erred in its instructions to the jury in defining what, within the meaning of the contract, would constitute "the business section" of the city. We have read these instructions with care, and think they present as clear and correct a definition of the meaning of the words, "the business section," as used in the contract, as could well be given. It would be difficult, if not impossible, to improve upon the instructions in that respect. Other errors are argued, but we discover no reasons for disturbing this verdict except those given in the second division of the opinion. For those reasons the judgment below must be *reversed*.