BERTHA M. CROWELL, Appellee, v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY OF MINNEAPOLIS, and C. C. CROWELL, Appellants.

**Evidence:** COMMUNICATION WITH A DECEDENT.  The beneficiary in a
1 policy of life insurance is not an assignee within the meaning of Code, section 4604, and is not precluded thereby from testifying to a communication with deceased respecting a transfer of the policy to another as security for premiums advanced.

**Life insurance:** CHANGE OF BENEFICIARY.  Ordinarily courts will
2 adopt the construction of a contract placed upon the instrument by the parties themselves; as where it has been determined by an agreement of all the parties in interest that an insured cannot legally change his beneficiary without the consent of the original beneficiary, the right of the insured in this respect being regarded as a doubtful question, and the change is made pursuant to such an agreement, the court will enforce the contract as construed by the parties.

**Same:** ASSIGNMENT OF INSURANCE AS SECURITY.  SUBSTITUTION OF
3 BENEFICIARY.  If by the terms of the assignment of an insurance policy it is doubtful whether it was intended to transfer the entire beneficial interest in the policy, or only so much thereof as would secure the assignee for premiums advanced, it may be explained by oral evidence of the transaction; and where there was as a part of the same transaction an applica-

tion to constitute the assignee a substituted beneficiary there was in legal effect but one instrument, and the proviso in the assignment that the assignee should recover only the amount of his advances is applicable to the entire transaction and reduces it to a contract of security.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

SATURDAY, NOVEMBER 21, 1908.

ACTION on a life insurance policy on the life of Emmett J. Crowell. The plaintiff was the original beneficiary named in such policy. Before the death of the insured, a change of beneficiaries was made, and defendant C. C. Crowell was specified as beneficiary in lieu of the plaintiff. The defendant insurance company conceded its liability for the full amount of the policy to one beneficiary or the other. It brought the money into court, and asked that it be discharged, and that the contending parties be required to litigate the question of right to said funds as between themselves. By stipulations of all parties, the case was dismissed as to the insurance company. Upon a trial on the merits as between the plaintiff and the defendant C. C. Crowell, the trial court found the plaintiff entitled to the deposit, except the sum of $476.70, which was allowed to defendant, and entered decree accordingly. The defendant appeals.—*Affirmed.*

*Samson & Noble,* for appellant.

*Hager & Powell,* for appellee.

EVANS, J.—On or about May 1, 1902, Emmett J. Crowell took out a life insurance policy for $10,000 in the Northwestern Life & Savings Company of Des Moines. In August, 1903, the Northwestern Life & Savings Com-

pany transferred all its business to the Northwestern National Life Insurance Company of Minneapolis, which latter company undertook to reinsure and assume and guarantee all the insurance contracts of the first-named company. After that date all premiums were paid by the insured to the Minneapolis company, and all business in relation to such policy was transacted with such company. The insured paid the successive annual premiums on the policy for three years, amounting to about $235 per year. For the fourth year he borrowed the annual premium from the Minneapolis Company; that is to say, he gave his note for the premium, in pursuance of certain provisions in the policy itself. In 1906 the fifth annual premium was about to become due, and the insured was financially unable to meet the same. Bertha Crowell, the wife of the insured and plaintiff herein, was the beneficiary named in the policy. The defendant C. C. Crowell was the father of the insured. Upon separate consultations between the father and the wife, and between the father and the insured, and between the insured and his wife, it was determined that the father would advance the premium then falling due, and would pay the premium note for the preceding year, and that the policy should be transferred to him by proper assignment and by substituting his name as beneficiary therein. Later in July, 1906, a formal written assignment of the policy, signed by the insured and by the plaintiff, and a formal written application for change of beneficiary, signed in the same manner, were presented to the company at its home office. The assignment and application for change were both approved by the company and so entered upon its books. On September 6, 1906, the insured died.

It is contended by the plaintiff that the written assignment and application were not in the form agreed upon orally between the parties, and that she never signed these writings in the form in which they were presented

to the company.    Her contention is, in substance, that she
obtained at the home office of the insurance company two
blank forms, both of which she signed in blank, and sent
the same by mail to her husband, with instructions to him
to fill them out properly and execute them himself, and
return the same to her for delivery to the company.    The
husband did fill out the blanks, and made certain changes
therein over the plaintiff's signature, and executed the
same himself, in the formal manner required, and sent the
same by mail to the company's office at Minneapolis.    All
of which was done without wrongful intent.    The plain-
tiff contends that she never saw the writings in the form
in which they were sent to the company, and never assented
thereto, and that the agreement therefore between her hus-
band and herself, on the one hand, and her father-in-law,
on the other, still rested in parol.    She claims such parol
agreement to be that the father-in-law was to advance the
two premiums before referred to, and that the policy was
to be transferred to him, and he was to be made the bene-
ficiary thereof for the purpose of securing his advancements
with interest thereon, and for nothing more.    The trial
court found this issue of fact with the plaintiff.    This
fact is of controlling importance in the case, and we direct
our attention first as to the correctness of the court's find-
ing thereon.

I.    We are first confronted with the question of the
admissibility of the testimony of the plaintiff as to the
conversation between herself and the insured on the sub-

1. EVIDENCE:
communica-
tions with a
decedent.

ject of the transfer to his father.    Objec-
tions were urged on the trial by the defend-
ant to this testimony as incompetent, as
being a personal transaction or communication with the
deceased.    The objection is renewed in this court, and the
further objection that the testimony was inadmissible as
being a communication between husband and wife and
prohibited under section 4607 of the Code.    The latter ob-

jection was not urged in the lower court, and can not be considered here.  The first objection urged is not available to the defendant.  As a substituted beneficiary in an insurance policy, he does not come within any of the classes sought to be protected by the provisions of section 4604 of the Code.  This point was ruled in *Shuman v. Supreme Lodge*, 110 Iowa, 480.  His right, as an assignee of the policy, to recover the amount advanced by him in payment of premiums with interest thereon, is not questioned by the plaintiff.  His rights in that respect are fully protected by the decree.  We hold therefore that the plaintiff's evidence at this point is admissible.

II.  We have read the evidence with much care, and are satisfied with the finding of fact by the district court as to the agreement between the parties.  Without any reasonable doubt, the oral understanding was that the father-in-law was to advance the two premiums, and was to be secured for such advancement by an assignment of the policy and by having himself substituted as beneficiary therein, and that this arrangement was to be temporary and to be determined as soon as the father-in-law should be paid the amount advanced by him.  Ordinarily this fact would seem to be quite conclusive of the rights of the parties, but we are confronted here with an argument that raises a number of interesting and close questions of law, and in which counsel contend that, notwithstanding the fact referred to, the right of the defendant C. C. Crowell to the full amount of the policy is absolute.  The argument of defendant's counsel, in brief, is: That the insurance policy sued on was an Iowa contract, and the contract of reinsurance between the first company and the second was also an Iowa contract; that by the terms of the policy itself, and by the permission of the law of Iowa, the insured had the absolute right to change the beneficiary in his policy without her consent; and that it was therefore immaterial whether she

consented or not to the written instruments executed by her husband in pursuance of which the assignment of the policy and the change of beneficiary were made and were approved by the insurance company. The argument of plaintiff is: That the defendant insurance company is a Minnesota corporation, with its home office in that State, and bound by the laws of that State; that the insured by his own voluntary acts became a member of the company and became bound by its by-laws and the laws of the State of Minnesota; that under such by-laws and the laws of the State of Minnesota the proposed change of beneficiary from the wife to the father could not be made without the written consent of the wife; and that the insured recognized the rights of the wife in this respect, and it was on that theory that he undertook to change the beneficiary. To this argument the defendant replies by quoting Section 1692 of the Revised Laws of Minnesota which have been in force since 1905, as follows: "Sec. 1692. Exemption in Favor of Family—Change of Beneficiary.—Every policy made payable to, or for the benefit of the wife of the insured, or after its issue assigned to or in trust for her, shall inure to her separate use and that of her children, subject to the provisions of section 1691, but the person applying for and procuring such policy may change the beneficiary or beneficiaries, if the consent of the beneficiary or beneficiaries named in the policy is obtained, or if a power to do so is reserved in the contract of insurance, or in case of the death or divorcement of a married woman named as beneficiary." Defendant contends that this section permitted the insured to exercise the power reserved in the policy, and that he had power therefore to change the beneficiary without her consent. It is also contended by the plaintiff that the defendant had no insurable interest in the life of the son, except to the extent of the money advanced, and could not therefore be a

beneficiary to any greater extent. The defendant contends that the insured had a right to make his father the beneficiary of his insurance.

Counsel on both sides fortify their respective positions with authorities. It goes without saying that the authorities are not in harmony on some of these questions. We do not find it necessary to follow counsel into these difficult places. Let it be conceded that the insured had the legal right to stand upon his contract of insurance as originally made, and as an Iowa contract, and that he could hold himself aloof from the by-laws of the reinsuring company and from the laws of Minnesota. He was not bound to follow this course. Let it be conceded that he had the legal right to change the beneficiary in his policy without his wife's consent. He was not bound to do so. He did choose to proceed in accordance with the by-laws of the defendant company and with the laws of Minnesota and with the consent of his wife. In legal effect, the change of beneficiary by the insured was conditioned upon the consent of his wife. The written instruments signed by him purported to be with the consent of his wife, and purported to be executed jointly with her. The oral understanding preceding such written instruments included the wife as a party to it. Granting, then, that he could have made the change without the consent of his wife, he did not undertake to do it in that way. There is no evidence that he was willing to make the change without her consent. Whatever rights the defendant Crowell had in this case arise in pursuance of a contract to which the plaintiff was a party, and he is in no position to say that the contract would have been equally good if she had not been a party. In view of the fact therefore that the insured put his own construction upon the relation which he sustained to the defendant company, and as

*2. LIFE INSURANCE: change in beneficiary.*

to the manner by which and the conditions upon which a change of beneficiary should be accomplished, and inasmuch as the plaintiff and defendant herein both acquiesced in such construction and undertook to conform to it, it is our duty to adopt the same construction and to determine the rights of the parties in accordance therewith. In no other way can we give effect to the real intent of the parties. This is a rule of frequent application and is in the interest of attaining practical and substantial justice. *Cole v. Edwards,* 93 Iowa, 477; *Capital City Gas Company v. Des Moines,* 93 Iowa, 547; *Daniels v. Decatur,* 99 Iowa, 440. This rule is salutary and is peculiarly applicable in cases where the rights of parties are otherwise doubtful, and where they have by their own concurring acts disclosed their mutual understanding of their respective rights.

III. There is another point of view from which the case may be considered. The assignment under which defendant claims contains this proviso: "It being 

3. SAME: assignment of insurance as security: substitution of beneficiary.

understood, however, that, in the event that said policy matures by the death of the insured, then and in that case the assignee herein shall be entitled to recover from said company only to the extent of his actual insurance interest properly proven." If, on the face of it, the meaning of this proviso be doubtful or ambiguous, such meaning becomes quite apparent in the light of the oral evidence. It must mean that the assignee is authorized to collect on the policy only such amount as will reimburse him for the money advanced by him on the faith of it. It is analogous to the proviso in a fire insurance policy, whereby it is made payable to a mortgagee, "as his interest may appear." This assignment therefore is something less than absolute. It is qualified by the quoted clause. We do not understand defendant to claim that this assignment would, of itself, entitle him to the full

proceeds of the policy. He bases his right to the full proceeds of the policy upon the change in beneficiary; but this written assignment and the written application for change of beneficiary are both parts of the same transaction. They are, in legal effect, one instrument. They are both signed by the plaintiff and the insured. They were put into effect at the same time and for the same purpose. The limitation above quoted was therefore necessarily applicable to the whole transaction, and its effect in equity was to reduce the transaction to a contract of security. So, if defendant be permitted to stand upon the written contract, he can recover no more than the lower court allowed him.

From whatever point we view the case, we reach the same result as did the trial court.

The decree of the lower court is therefore *affirmed*.