JORDAN v. RODEN et al.   UNION CENT. LIFE INS. CO. v. SAME.   HEALD
v. PHŒNIX MUT. LIFE INS. CO.

(Circuit Court of Appeals, Sixth Circuit.   March 6, 1923.   Rehearing Denied
June 9, 1923.)

Nos. 3732–3734.

**1. Pleading ⟲237(6)—Court erred in not permitting tender of amendment, asking reformation of contract to conform to proof.**

In an action by beneficiaries against insurance companies and an agent to recover the face of policies, *held*, that the court on the trial erred in not permitting the agent to file an amendment to his pleading, asking reformation of a contract assigning a policy sued on to him as security for advances made in payment of premium, in view of the evidence.

**2. Insurance ⟲222—Agent held entitled, under assignment of policy, only to repayment of premiums advanced.**

Under assignments to insurance agent of life policies, though absolute in form, the court properly allowed such agent only the premium advanced by him, where the assignments were only intended by the parties as security for the repayment to the agent of money paid on account of premiums.

**3. Insurance ⟲590—Assignee of policies held not entitled to attack award to beneficiary.**

Assignee of an insurance policy on the life of one engaged in business with other persons also carrying insurance was entitled as to such policy to recover from the proceeds only the amount actually paid by him in the way of premiums on such policies, where the beneficiary was the wife of decedent, and not the business associate of the decedent; such assignee's interest as a contingent creditor of such business associates being too remote to justify a tax upon the award to the widow, and the receiver, representing the creditors of such business associates, having the primary right to challenge the correctness of this award, and not having done so.

**4. Contracts ⟲99(1)—Presumed that business men understand nature of contracts signed.**

The presumption obtains that men of experience in business affairs and entirely competent to contract knew and understood the nature and effect of every contract to which they subscribed their names.

**5. Insurance ⟲235—Burden on beneficiaries to show policy not effectively cancelled.**

In action on life policy by beneficiaries, who signed release and receipt on surrender of the policy to the insurer, the burden was on the plaintiffs to prove by clear and convincing evidence that they had no knowledge of the contents of the release and receipt signed by them, that they relied and had a right to rely on statements made to them by one to whom the policies had been assigned before surrender, that the papers they were signing constituted merely an assignment for purpose of protecting such assignee, and that such statements were false and fraudulent.

**6. Insurance ⟲645(1)—Pleadings held to present equitable issue.**

Where beneficiaries in life policy alleged "on information, that, if said policies have been canceled, it was the result of fraud of said E. J. or the said U. C. Life Insurance Company, or both of them, for the purpose of preventing any claim being made against said U. C. Life Insurance Company," and the insurance company in its answer denied each and every allegation contained in the complaint, the pleadings presented an equitable issue between the plaintiffs and the insurance company, though an accounting was asked against E. J.

**7. Equity ⟲39(1)—Will retain jurisdiction to avoid multiplicity of suits.**

A court of equity, having jurisdiction of a cause, will retain that jurisdiction for the purpose of avoiding a multiplicity of suits and granting full relief to the parties in one action.

⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Appeal and error** ⬤184, 193(2), 197(2), 236(1)—**Questions first raised on appeal not considered.**

A defendant, who did not object to the jurisdiction of the trial court, to misjoinder of causes of action, to misjoinder of defendants, or that the bill of complaint was insufficient to present a certain issue, or request that the cause be transferred to the law side of the court, cannot raise such objections for the first time on appeal.

9. **Insurance** ⬤235—**Evidence held to sustain finding policies not surrendered.**

In action on life policies, evidence *held* to sustain finding that policies were not surrendered and canceled.

Appeal from the United States District Court for the Western District of Michigan; Clarence W. Sessions, Judge.

Action by Isaac M. Roden and others against Eugene Jordan and others in the state court. After removal, Charles M. Heald, was appointed receiver of the Crohon & Roden Company, Limited, and intervened, and certain insurance companies also intervened. From a decree, Eugene Jordan, the Union Central Life Insurance Company, and Charles M. Heald, as receiver, respectively and separately appeal. Affirmed in all respects, save as to appellant Jordan, as to whom the decree is reversed and remanded.

Writ of certiorari denied, 262 U. S. ——, 44 Sup. Ct. 34, 68 L. Ed. ——.

In No. 3732:

B. M. Corwin, of Grand Rapids, Mich. (Corwin & Norcross, of Grand Rapids, Mich., on the brief), for appellant.

Jay W. Linsey, of Grand Rapids, Mich. (Smedley, Linsey & Shivel, of Grand Rapids, on the brief), for appellees Crohon and others.

Walter F. Whitman, of Grand Rapids, Mich. (Travis, Merrick, Warner & Johnson, of Grand Rapids, Mich., on the brief), for appellee Heald.

In No. 3733:

Robert Ramsey, of New York City, for appellant.

Jay W. Linsey, of Grand Rapids, Mich. (Smedley, Linsey & Shivel, of Grand Rapids, Mich., on the brief), for appellee Crohon and others.

Walter F. Whitman, of Grand Rapids, Mich. (Travis, Merrick, Warner & Johnson, of Grand Rapids, Mich., on the brief), for appellee Heald.

In No. 3734:

Walter F. Whitman, of Grand Rapids, Mich., and Smedley; Linsey & Shivel, of Grand Rapids, Mich. (Travis, Merrick, Warner & Johnson, of Grand Rapids, Mich., on the brief), for appellant.

B. M. Corwin, of Grand Rapids, Mich. (Corwin & Norcross, of Grand Rapids, Mich., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The above-named causes are separate appeals from the same decree. They involve the same transactions and were heard and submitted together. The original action, in which this decree was entered, was brought in the superior court of

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Grand Rapids, Mich., by Isaac M. Roden, Michael Roden, Reuben Roden, Crohon & Roden Company, Limited, Roden Leather Company, and Rachel T. Crohon against Eugene Jordan, the Union Central Life Insurance Company, the Phœnix Mutual Life Insurance Company, the Guardian Life Insurance Company, and a number of other insurance companies, for an injunction and an accounting in reference to certain policies of insurance on the life of Biar Crohon, deceased. This action was later removed to the United States District Court for the Western District of Michigan. Shortly thereafter Charles M. Heald was appointed receiver of Crohon & Roden Company, Limited, and intervened on behalf of the creditors of that company. A number of the insurance companies intervened and paid into court the face value of the policies issued by them, respectively, on the life of Crohon. The answer of Jordan averred that he had paid and secured to be paid a large sum of money applied in payment of the premiums on the policies issued on the life of Biar Crohon, and also upon the lives of Isaac M. Roden, Michael Roden, and Reuben Roden, all of which he claimed he was entitled to receive out of the proceeds of the insurance policies on the life of Biar Crohon under and by virtue of a contract between himself and the plaintiffs, who were beneficiaries named in these policies, and that in furtherance of the purpose of this contract and agreement these policies were assigned to him.

It is admitted that Jordan paid for the purposes above mentioned the sum of $58,000, of which $27,387.85 was paid as premiums on the policies issued on the life of Crohon, and the balance paid as premiums on policies issued on the lives of Isaac M. Roden, Michael Roden, and Reuben Roden; but it was denied that Jordan was entitled to any lien on the proceeds of the Crohon policies for moneys advanced as premium on the Rodens' policies. The court found in favor of the plaintiffs upon this issue. Jordan also claimed that the policies issued by the Guardian Life Insurance Company upon the life of Biar Crohon had been assigned to him unconditionally and that he was therefore entitled to all the proceeds of these policies. Upon this issue the court found adversely to Jordan. Jordan also claimed that the $50,000 policy issued by the Canada Life Assurance Company upon the life of Biar Crohon was assigned to him as security for the money he had advanced in payment of premium on all the policies issued to Crohon and upon all the policies issued to the Rodens or either of them. Upon this issue the court found against Jordan. Jordan filed a separate appeal to the parts of the decree relating to these three issues.

The Union Central Life Insurance Company denied liability upon the policies it had issued upon the life of Crohon. Upon this issue a decree was entered against the Union Central Life Insurance Company for the face value of its policies. From this part of the decree it filed a separate appeal, being cause No. 3733.

The Phœnix Mutual Life Insurance Company denied liability upon the policies of insurance it had issued upon the life of Crohon, and upon this issue the court found for the Phœnix Insurance Company.

From this part of the decree, Charles M. Heald, receiver of the Crohon & Roden Company, Limited, filed a separate appeal, being cause No. 3734.

The first and most important question presented by Jordan's appeal is whether he is or is not entitled to be reimbursed out of the proceeds of the Crohon policies, for all the moneys paid or secured to be paid by him for premiums on the policies issued on the lives of Isaac M. Roden, Michael Roden, and Reuben Roden. In the disposition of this question it is wholly unnecessary to review the evidence in detail. There is evidence tending to prove that Jordan, who is the local manager at Grand Rapids, Mich., of the Union Central Life Insurance Company, and who holds brokerage contracts with other life insurance companies, began writing insurance on the lives of Biar Crohon, Isaac M. Roden, Michael Roden, and Reuben Roden in 1916. All of these men were jointly interested in the business of Crohon & Roden Company, Limited, doing business under the trade name of the Roden Leather Company; that the procuring of these several policies was a joint enterprise, in which all the persons insured engaged for the benefit, protection, and credit of the companies above named; that the persons insured and neither of them were able to pay premiums on these policies when the same were issued or when the annual premiums became due; that their joint and several obligations were taken for the payment thereof by Jordan, or by the companies represented by him, or the money was obtained upon the notes signed by the insured and the beneficiaries, and signed by Jordan as surety.

Shortly before the death of Crohon the financial affairs of Crohon & Roden Company, Limited, became so involved that there was a meeting of its creditors to determine the advisability of having a receiver appointed. Prior to this meeting the Rodens, as beneficiaries, assigned these insurance policies on the life of Biar Crohon to Jordan, and a few days later Jordan signed and gave to the Rodens a paper writing evidencing the purposes for which the assignment of these policies had been made. This writing is dated September 20, 1920, but it is admitted that it was in fact executed and delivered on the 8th of September, and recites the fact that these policies upon the life of Biar Crohon had been assigned to Jordan; that the assignment was made to him for the purpose of securing him for money he had advanced upon the notes of the Roden Leather Company and Crohon & Roden Company, Limited, Isaac M. Roden, Michael Roden, and Reuben Roden, and the agreement upon the part of Jordan to apply any money derived from any of such policies by way of death claim or otherwise as follows:

"First, to settle any and all indebtedness due and owing to me by reason of the insurance of [said] policies of insurance as evidenced by the notes from Roden Leather Company, Crohon & Roden Company, limited, Reuben Roden, Isaac M. Roden, and Michael Roden."

This contract further provided that, if any of the notes given for premium in this policy were paid by the creditors of the companies named, Jordan would assign so much of the residue of the fund derived from such policies to such creditors as necessary to reimburse

them for payments so made, and that after the settlement of all the notes delivered to Jordan in payment of said policies, and after the reimbursement of any creditors who may have paid any of said notes, then to pay the balance of any funds derived from said policies to the Crohon & Roden Company, Limited, and the Roden Leather Company, Isaac M. Roden, Michael Roden, Reuben Roden or to any person, firm, or corporation that they should jointly direct.

It is claimed on the part of Jordan that at the time these policies were assigned it was agreed and understood that they were assigned to him to protect and reimburse him for all moneys paid or secured to be paid by him upon all the policies issued, not only to Crohon, but also to the Rodens; that this contract as it is written is subject to that construction, and that plaintiffs in their bill of complaint aver this was the agreement, understanding, and contract between the parties. It is further claimed on behalf of Jordan that this contract, executed by him on the 8th of September and delivered to the Crohons, was, in the absence of his regular counsel, prepared by an attorney unfamiliar with the unitary character of all these insurance transactions and the joint interest of each and all of the parties in all of the policies; that, if this contract is not subject to be construed as above stated, he should be permitted to amend his answer or file an independent petition to have the contract reformed, so as to evidence and express the real contract.

To that end Jordan made application to the court for leave to amend his answer, or file an independent petition for reformation of this contract, whereupon the court stated that such amendment may be considered as tendered to the court; that a general denial thereof by the plaintiffs and by the receiver might also be considered as tendered to the court, and that he would determine the right of Jordan to file such an amendment upon the final disposition of the case; that, in event the court sustained Jordan's motion to amend, the same would be considered as made and the pleadings amended accordingly. In its final decree, the court neither sustained nor overruled this motion, nor did it make any reference thereto.

[1] In this respect we think the court erred to the prejudice of Jordan. There is substantial evidence in this record which, taken into consideration with the allegations of the bill of complaint filed by the Rodens, tends to sustain the claim made by Jordan in reference to the terms of the agreement actually made between himself and the Rodens, and that the contract as written does not clearly state that agreement. Jordan should have been permitted to present that issue by an amended pleading, directly to the trial court. We, of course, express no opinion as to the necessity for or the right of Jordan to have this contract reformed. That question is one for the trial court, to be determined by it upon the evidence, wholly apart from and independent of the holdings of this court that Jordan should have been permitted to file an amended answer tendering that issue. For the reasons above stated, that part of the decree from which Jordan has taken a separate appeal is reversed and remanded for further proceedings in accordance with this opinion.

292 F.—37

[2] The second question presented by Jordan's appeal relates to that portion of the decree in reference to the policies on the life of Crohon issued by the Guardian Life Insurance Company. It appears from the evidence that the assignments to Jordan of the Guardian Life policies, although absolute in form, were nevertheless intended by the parties as security only for the repayment to Jordan of money paid or secured to be paid by him on account of premiums. The trial court properly found that Jordan had no other or further interest in these policies, and as that interest is fully protected by the $27,-387.85 awarded to Jordan out of the fund arising from the proceeds of these policies, the judgment of the District Court upon that issue is affirmed.

A policy for $50,000 was issued by the Canada Life Assurance Company upon the life of Biar Crohon. Later Rachel T. Crohon, the wife of Biar Crohon, was appointed the beneficiary of this policy, and this appointment and designation was indorsed by the insurance company upon this policy. In making this appointment of beneficiary the assured used a blank upon which the following was printed:

"I hereby reserve the right to further change the beneficiary in accordance with the terms of the said privilege."

This was erased by the assured by drawing a line entirely through it. It was further provided in the policy that "during the lifetime of the absolute beneficiary the right to change the beneficiary will not exist in the assured," and that no appointment or change of beneficiary shall take effect unless indorsed on the policy at its home office. This policy was assigned on January 12, 1920, by Biar Crohon to Isaac M. Roden, Michael Roden and Reuben Roden, but Rachel Crohon did not join in this assignment, nor does it appear that she assented thereto. This assignment was noted by the company upon the policy. This policy was later assigned by the Rodens to Jordan, and Jordan is now claiming the right to have the proceeds thereof applied to the payment of his claim for moneys paid or secured to be paid by him upon all the policies issued to Crohon and to the Rodens. The Canada Life Assurance Company paid into court the sum of $47,525, being the full face of the policies less the money due for premiums thereon. The court awarded to Jordan out of the fund arising from this policy the sum of $3,528.56 for premiums paid by him upon this policy with interest thereon, and the net balance of $43,996.44 to the beneficiary, Rachel T. Crohon.

[3] Jordan is the only one objecting to this part of the decree. He has been awarded the full amount, with interest, of the premiums paid by him upon this policy. The fund in court is amply sufficient to pay Jordan in full for any amount the court may find due him out of the Crohon policies. His interest as a contingent creditor of the Rodens for any part of his claim not established as a lien against this fund is too remote to justify his attack upon the award to Rachel Crohon. The receiver has the primary right to challenge the correctness of this award and the receiver has not appealed.

For the reasons stated the decree of the trial court upon this issue is affirmed.

The Phœnix Mutual Life Insurance Company admitted that it had issued a policy for $25,000 on the life of Biar Crohon, which policy was assigned to Isaac M. Roden, Michael Roden, and Reuben Roden, who in turn assigned the same to Eugene Jordan, but claimed that on the 8th day of September, 1920, Eugene Jordan, Isaac M. Roden, Michael Roden, and Reuben Roden executed a joint receipt and delivered the same to the Phœnix Mutual Life Insurance Company, acknowledging the payment of $1,392.27 in full satisfaction and discharge of any and all claims under this policy; that the policy was returned and canceled, and was not in force at the death of Biar Crohon.

It is contended on behalf of plaintiffs that the assignment to Jordan was for security only and to assist in keeping the policy in force, and not for the purpose of surrender, and therefore he had no authority to surrender this policy; second, that the procuring of the assignment and attempted surrender of the policy was the result of fraud and deceit and therefore not effective; third, complete and final surrender was not consummated. In view of the fact that the Rodens, the beneficiaries under this policy, joined with Jordan in executing the receipt for the sum of $1,392.27 in full satisfaction and discharge of any and all claims under this policy, the purpose for which this policy was assigned to Jordan becomes wholly unimportant, except in so far as it may affect the question of fraud in procuring its release and surrender to the Phœnix Mutual Life Insurance Company.

[4, 5] The Rodens admitted that they signed this receipt and release of this policy, but deny that they knew it was a receipt and release. They further testified that they signed the same upon the representation of Jordan that it was merely an assignment for the purpose of protecting Jordan, that they did not read the same, that they had no intention whatever of signing such a release or surrendering the policy, and that Jordan was not authorized so to do. It is, however, unnecessary to review the evidence in detail. The Rodens were men of experience in business affairs and entirely competent to contract. The presumption obtains that they knew and understood the nature and effect of every contract to which they subscribed their names. The trial court saw these witnesses and heard them testify, and upon consideration thereof held that this policy of insurance was effectively canceled and surrendered prior to the death of Biar Crohon. This finding and decree of the trial court is fully sustained by the evidence, especially in view of the fact that the burden was upon the Rodens to prove by clear and convincing evidence that they had no knowledge of the contents of the release and receipt signed by them, that they relied and had a right to rely upon the statements made to them by Jordan, and that such statements were false and fraudulent.

For the reasons stated, the decree of the District Court in favor of the Phœnix Mutual Life Insurance Company is affirmed.

It is contended on the part of the Union Central Life Insurance Company that the court had no jurisdiction to grant purely legal relief upon a bill of discovery in a proceeding in equity; that the pri-

mary relief sought was an accounting against the defendant Jordan; that the several insurance companies were joined with him as defendants solely to preserve by injunction the status quo, pending the final decree; that no cause of action of any nature was stated in the bill as against either of these companies; and that neither of these companies had any interest whatever in the controversy between the plaintiffs and any of the other defendants.

Under equity rule 26 (201 Fed. v, 118 C. C. A. v) it is provided that where the causes of action against several defendants are not joint, nevertheless, such defendants may be joined in one action if it appear that there is sufficient ground for uniting the causes of action in order to promote the convenient administration of justice. The court, however, has at all times authority to order separate trials or transfer a suit in equity to the law side of the court. Rule 19 (198 Fed. xxiii, 115 C. C. A. xxiii) provides that the court at every stage of the proceeding must disregard any error or defect in the proceedings which does not affect the substantial rights of the parties.

[6, 7] This action in equity was not only for an injunction and accounting against Jordan, but also to require each of the defendant insurance companies, respectively, to pay into court any money due and payable upon policies issued by it upon the life of Biar Crohon, and that the court administer the fund arising therefrom. It is averred in paragraph 12 of the bill of complaint that:

"Plaintiffs further show on information that if said policies have been canceled, it was the result of fraud of said Eugene Jordan, or the said Union Central Life Insurance Company, or both of them, for the purpose of preventing any claim being made against said Union Central Life Insurance Company."

The Union Central Life Insurance Company in its answer denied each and every allegation contained in the twelfth paragraph of the complaint. Therefore the pleadings presented an equitable issue between the plaintiffs and the Union Central Life Insurance Company, clearly within the jurisdiction of the court. 3 Joyce on Insurance, p. 2898; 25 Cyc. p. 792. A court of equity having jurisdiction of a cause will retain that jurisdiction for the purpose of avoiding multiplicity of suits and granting full relief to the parties in one action. No other issue was in fact presented or submitted to the court. The Union Central Life Insurance Company admitted that it had issued these policies upon the life of Biar Crohon, but contended that they had been surrendered and canceled prior to his death. The amount due on these policies, if they were still in force, was not a matter in dispute. The decision of the question whether the claimed cancellation and surrender were unauthorized and fraudulent determined the company's liability or nonliability upon the policy for the face value thereof, less the credit claimed by the company and admitted by the plaintiffs.

[8] Nor did the Union Central Life Insurance Company object to the jurisdiction of the trial court, to the misjoinder of causes of action, to the misjoinder of defendants, or that the bill of complaint was insufficient to present this issue, or request that the cause be trans-

ferred to the law side of the court. These objections, now raised for the first time upon this appeal, will necessarily be disregarded by this court. 5 Foster's Fed. Practice, p. 3892; Reynes v. Dumont, 130 U. S. 354, 394, 9 Sup. Ct. 486, 32 L. Ed. 934.

The evidence relating to the cancellation of the policies issued by the Union Central Life Insurance Company differs from the evidence relating to the cancellation of the policies issued by the Phœnix Mutual Life Insurance Company in the following important particulars:

First. The policies of the Union Central Life Insurance Company were not in fact surrendered and canceled and the premiums thereon returned prior to the death of Biar Crohon.

Second. Jordan was the local manager at Grand Rapids, Mich., of the Union Central Life Insurance Company of Cincinnati, Ohio, but whatever business he transacted for the Phœnix Mutual Life Insurance Company was under a brokerage contract.

Third. Jordan, the local manager of the Union Central Life Insurance Company, after the death of Crohon, told Reuben Roden and Charles Ward, an attorney representing the Rodens, that no policies had been surrendered and canceled, except the $25,000 policy of the Phœnix Mutual.

Fourth. The receipts and releases of the Union Central Life Insurance Company's policies were not signed by the Rodens, but only by Jordan, the local manager of that company.

Fifth. No premiums were due or to become due upon these policies for several months after the claimed cancellation and surrender. In this connection Jordan testified that he knew the Rodens did not desire to surrender these policies as long as they could be kept in force, and that they intended to try to raise the money themselves to pay the premiums as they became due, if Jordan was not able to make satisfactory arrangements therefor.

Sixth. The testimony, and particularly the letters written by Jordan to the Union Central Life Insurance Company, evidences the fact that Jordan, who was the agent and manager of the Union Central Life Insurance Company at Grand Rapids, Mich., and claiming to be the agent and attorney in fact of the Rodens, directed his activities towards procuring the release and the surrender of these policies in total disregard of the rights and the wishes of the Rodens and solely in the interest and benefit of the insurance company.

Seventh. The testimony of Jordan that these policies were canceled and returned upon the 15th is inconsistent with his testimony as to his proffer to assign these policies to the creditors on that date, if the creditors would pay the premium, and hold the policies for their security. It is also inconsistent with his records showing that the transaction was really completed on the 23d, three days after the death of Crohon.

In view of this substantial difference in the evidence, the finding and the decree of the court in reference to the issue presented by the answer of the Phœnix Mutual Life Insurance Company can in no way affect, much less control, the disposition of the issue joined by the answer of the Union Central Life Insurance Company.

[9] The evidence directed to this issue fully sustains the finding and decree of the District Court that these Union Central Life Insurance policies had not been surrendered and canceled prior to the death of Crohon; that they were not surrendered and canceled after his death in pursuance of any valid contract made before his death; and that the pretended surrender and cancellation, three days after his death, did not release the insurance company from its liability upon these policies for the full face value thereof, less the admitted credits.

It is insisted, however, that in addition to the credit of $4,808.46 allowed by the trial court for net premiums returned by the Union Central Life Insurance Company, it is entitled to a further credit for policy loans to the Rodens, and perhaps premium notes unpaid, the exact amount of which, with interest thereon, does not clearly appear from Exhibit 74, to which the briefs refer. There is, however, no controversy that the Union Central Life Insurance Company should be credited with the amount of these loans, and, if counsel will stipulate the exact amount thereof, a credit will be allowed therefor, and the decree of the District Court for the residue will be affirmed. If counsel can not agree as to the amount of these loans, they may present their several claims to the court in reference thereto by additional briefs.

The decree of the District Court is affirmed in all particulars, except as to the Jordan appeal in reference to the amount awarded to him out of the proceeds of the Crohon policies and the refusal of the court to permit him to amend his answer to present the question of reformation of contract, and the cause is remanded to the District Court for further proceedings and trial upon these issues in accordance with this opinion, and for execution of the parts of the decree affirmed.

Jordan will be allowed his costs in this court out of the fund. A judgment for costs will be entered in favor of the Phœnix Insurance Company against Heald, receiver, and judgment for costs will be entered in favor of Heald, receiver, against the Union Central Life Insurance Company. The costs, however, will be apportioned in accordance with any agreement made between the parties in reference to the printing of the record in this case.