**THOMSON v. THOMSON.**

No. 13330.

Circuit Court of Appeals, Eighth Circuit.

July 26, 1946.

Rehearing Denied Sept. 3, 1946.

582

Harry A. Hall, of Kansas City, Mo. (Schultz & Bodney and White & Hall, all of Kansas City, Mo., on the brief), for appellant.

Harvey E. Hartz, of Kansas City, Mo., for appellee.

Before GARDNER and THOMAS, Circuit Judges, and DUNCAN, District Judge.

GARDNER, Circuit Judge.

This was an interpleader action filed by the John Hancock Mutual Life Insurance Company against Caroline Thomson and Freeman J. Thomson as administrator of the estate of Arthur W. Thomson, deceased, to determine the right to the net proceeds of a life insurance policy issued by the Insurance Company on the life of Arthur W. Thomson. The policy was issued June 15, 1938, for the sum of $20,000. Caroline Thomson, then the wife of the insured, was designated as beneficiary. Right to change the beneficiary was by provision of the policy reserved to the insured.

It was contended by appellant, Caroline Thomson, in the trial court, and she renews the contention here, that an oral contract was entered into between her and the insured, by the terms of which she acquired a vested interest in the proceeds of the policy which could not as between her and the insured be taken from her by his act. She predicates this right upon substantially the following facts disclosed by the record:

She and Arthur W. Thomson married July 17, 1930, and she immediately joined him in his business as an itinerant photographer, which he conducted by organizing a group of solicitors who traveled from town to town canvassing customers. These prospects were reported and later called upon by photographers and salesmen. Photographs were taken and sales made, and Mr. Thomson usually made the deliveries and collected the money and was in the habit of carrying large sums of cash on his person, the evidence showing that he had $3526 in cash on his person when he died. His net income was approximately $15,000 a year. Caroline Thomson began working with him as a solicitor, but from 1933 on she had charge of the advance group of solicitors, supervising and planning their work. Thomson was apparently a periodic drinker and on various occasions would come into a town and go on an extended drinking spree, and during such times he would spend whatever money he had collected.

On May 24, 1938, Mr. and Mrs. Thomson met with Mr. Louis Niman, manager of the John Hancock Mutual Life Insurance Company at Kansas City, Missouri, and discussed with him the question of taking out life insurance. Thomson related to Mr. Niman the nature of the business he and his wife had been engaged in, stating that he had not paid her for her services in the business and that he was going to take out life insurance for her benefit as payment for her services. The witness testified that:

"He (Thomson) stated to me that he wanted this contract for her benefit and that he wanted it so that in the event of his death she would be paid for her work and her efforts in working with him in the business."

As a result of this conference the form of policy was agreed upon and Thomson signed up an application naming Caroline Thomson as the beneficiary, and as he did so remarked to his wife, "Now Baby, this is for you and will always be for you." Shortly thereafter Niman delivered the policy, at which time Thomson in the presence of Mrs. Thomson, said that:

"He was very happy to get it and he said that he felt very happy that he had the contract now and that his wife would be properly taken care of in the event of his untimely death."

Subsequent to the delivery of the policy, the insured in conversation with one Anthony Wassinger, said that he had spent all the money earned by the joint efforts of himself and his wife and had not paid Caroline for her work but that he had

agreed with her to take out this life insurance policy as payment for her services. At a still later date Thomson, having sold his car to one Carl D. Austin, was looking through his papers for the car title and came upon some papers in connection with the application for this insurance policy. These he showed to Mr. Austin, saying that his wife had worked faithfully with him for many years and had not received what was justly due her and he had taken this policy out for her. The witness, referring to his conversation with Thomson about this policy, testified that Thomson said:

" 'You know, I have a good time, spend my money pretty freely. * * * Caroline has worked pretty faithfully with me for a good many years and didn't receive what she was justly due'; that she had worked a long time and he didn't think she had been adequately taken care of; that she had handled a crew of girls for him and that without her he wouldn't have done nearly so well * * * and he felt that he hadn't done as much for her as he should."

There was evidence, some of which was hearsay, and some of which was opinion, that Caroline Thomson was paid some wages from time to time, the definite amount of which is not shown as she was paid money for distribution to her helpers. The court declined to permit her to be a witness in her own behalf, but erroneously permitted witnesses to testify to self-serving declarations allegedly made by the insured relative to payments made to Caroline Thomson.

On February 3, 1940, Thomson went to the office of the Insurance Company and again met Mr. Niman, telling him that he was arranging with the Mercantile Bank for a loan, and asked for forms so that the policy could be used as security for the loan. Niman advised him that it would require his wife's signature, to which Thomson replied that he did not wish her to know anything about it if it could be accomplished without her knowledge, and Niman advised him that the only way to accomplish this would be to change the beneficiary to his estate and then make an assignment to the bank.

Thomson replied that he would do this and that he was making arrangements with the bank to pay the excess over the loan to Caroline Thomson. In connection with this transaction and as a part of it, on the advice of Niman he signed a formal application nominating his estate as beneficiary. He then executed a formal assignment to the Mercantile Home Bank and Trust Company of Kansas City, on a blank furnished for that purpose, the assignment reciting that the company was authorized to make loans on pledge of the policy and to pay the cash surrender value, or any remaining proceeds of the policy at its maturity, to the bank, and providing further that the bank might apply any distribution of surplus toward the payment of premiums. The assignment contained provision that:

"Any nomination of beneficiary under paid Policy heretofore made and any method of optional settlement heretofore elected thereunder are hereby revoked."

Both the assignment and the application to change the beneficiary were left with Niman who sent them to the Home Office for proper endorsement, following which the policy with the assignment was sent to the bank where it remained until after the death of the insured, whereupon the Insurance Company paid the bank's loan out of the proceeds of the policy. The loan secured was in fact used to pay the premium and was later increased to cover the four subsequent premiums. Caroline Thomson had no knowledge of the transactions connected with the change of beneficiary and the pledge of the policy to secure this loan. She continued to work with her husband in the business some six years after the policy was issued.

On June 26, 1944, marital differences having arisen between them, the Thomsons went to the law office of Arthur C. McHenry, in Waukeegan, Illinois, and employed him to file a divorce action for Caroline Thomson, requesting him to draw papers relative to a property settlement so that Thomson might sell a hotel property in Waukeegan, title to which stood in his name, clear of Mrs. Thomson's dower interest. A contract of settlement was thereupon prepared and signed by both parties. By this contract Thomson agreed to pay

his wife $2500, in annual installments of $500, commencing in 1944. Caroline Thomson agreed to waive all rights to alimony, and the contract contained the further provision:

"That the parties hereto hereby agree that each of them is hereby wholly and forever barred of and from all rights, claims and demands in and to the property of each other, real, personal or mixed, wheresoever situated, and whether now possessed by the said parties or hereafter acquired by them, including the rights of dower and homestead."

A decree of divorce was granted Caroline Thomson by the Circuit Court of Lake County, Illinois, on August 1, 1944, without alimony, the decree embodying the terms of the property settlement contract. The attorney who prepared the contract of settlement testified that after the parties returned to his office and had signed the contract, "I said to her, 'Now, be sure that you are perfectly satisfied.' She said, 'This doesn't amount to much. There is insurance,' and he spoke up and said, if anything happened to him that she was well taken care of by the insurance. That was all that was said regarding it. Nothing was said to me prior to the drawing of this about any insurance. They only spoke of the real estate known, I think, as the Greenwood."

Following the settlement and the securing of the divorce, Thomson told others that the life insurance was Caroline's as payment for her services, and under date August 22, 1944, shortly before his death, he wrote her a letter in which he stated:

"As far as I am concerned you are the same little girl to me. My insurance policy still shows you as beneficiary and I have no idea of changing it."

In this connection it should be noted that Thomson's conversation with Carl D. Austin occurred long after he had, for the purpose of securing the loan from the bank, changed the name of the beneficiary.

Thomson died December 4, 1944, owing the bank, which retained the policy as collateral security, and the Insurance Company deducted the amount of the indebtedness to the bank from the amount due on the policy and paid the balance into court in the interpleader proceeding. The trial court held that Caroline Thomson was not entitled to the fund, adjudging that it belonged to the estate of the insured.

Caroline Thomson seeks reversal upon substantially the following grounds: (1) The court erred in holding that she had no vested interest in the policy proceeds; (2) the change of beneficiary and assignment of the policy did not divest her of her beneficial interest in the policy proceeds; (3) the property settlement and divorce decree did not divest her of her right to the insurance proceeds; (4) the testimony of Arthur C. McHenry was competent to show the facts and circumstances concerning the property settlement and divorce decree; (5) the court erred in excluding Caroline Thomson as a witness.

The administrator bases his right to the proceeds upon the change made in the beneficiary, upon the property settlement made between insured and Caroline Thomson, and upon the decree granting divorce.

■ Where a life insurance policy by its terms gives the insured the right to change the beneficiary or assign the policy, the beneficiary so far as the policy contract is concerned takes only a contingent interest. McKinney v. Fidelity Mutual Life Ins. Co., 270 Mo. 305, 193 S.W. 564; Morgan v. Penn Mutual Life Ins. Co., 8 Cir., 94 F.2d 129. This rule is strongly stressed by appellee. It is the claim of appellant, however, that she acquired a vested right in the insurance policy in its inception, and, confessedly, if she acquired such right, then the rule which limits the interest of the beneficiary in a policy which by its terms gives the insured the right to change the beneficiary, to a contingent interest only, has no application as between the parties. The right which appellant here asserts is not based upon the terms of the policy which would, of course, be binding as against the Insurance Company and as against the bank relying upon the assignment without notice of her contract. She claims to have had a contract with the insured based upon a valuable consideration. The question presented is what, if any, right Caroline Thomson acquired by rea-

son of her contract with Thomson at the time of taking out the policy and her subsequent property settlement.

In this connection it is observed that the court found that Caroline Thomson "was paid a salary the same as other solicitors who were paid by the insured." We have carefully considered the entire record and are of the view that this finding is not sustained by substantial evidence. The most that can be said with reference to the evidence in this respect is that she was promised a salary and that some of it was paid. This may be of importance as bearing upon the consideration for the contract.

The testimony with reference to the negotiations which culminated in the taking out of this insurance policy is undisputed. Thomson acknowledged that he was obligated financially to his wife. He took out this policy in consideration of that obligation and she thereafter continued to work as theretofore. Not only is the evidence with reference to the negotiation of the contract of insurance undisputed but it is corroborated by the various acts and declarations of the insured subsequent thereto. He reiterated to different parties on numerous occasions that he had taken out this policy for the benefit of his wife and why he had done so. Some of these admissions or statements were made long after the beneficiary named in the policy had been changed to his estate in connection with securing the loan from the bank. Even after the parties were divorced he stated to Caroline Thomson's lawyer, in her presence, that she had this insurance, and he wrote her a letter in which he again assured her that the insurance was hers. She fully performed her part of the contract and as against the insured or his estate she acquired a vested right notwithstanding the fact that the policy by its terms reserved to the insured the right to change the beneficiary. Fendler v. Roy, 331 Mo. 1083, 58 S.W.2d 459; Chapman v. McIlwrath, 77 Mo. 38, 46 Am.Rep. 1; Kansas City Life Ins. Co. v. Jones, D.C., 21 F. Supp. 159; Tivis v. Hulsey, 146 Kan. 851, 73 P.2d 1111; Northern Life Ins. Co. v. Burkholder, 131 Or. 537, 283 P. 739;

Shoudy v. Shoudy, 55 Cal.App. 344, 203 P. 433; Mutual Life Ins. Co. v. Franck, 9 Cal.App.2d 528, 50 P.2d 480; Jacoby v. Jacoby, S.D., 11 N.W.2d 135; Appleman's Insurance Law and Practice, Vol. 2, § 922. The rule is well stated by the last cited authority as follows:

"Equities may be established in the first instance by a contract with the insured, particularly where the claimant's part has been fully performed. If sufficient consideration appears to support the insured's promise to make the claimant the beneficiary or not to change the designation so as to deprive the named beneficiary of his interest therein, the claimant takes a vested interest in the proceeds. And this is true regardless of the fact that the policy gives the insured the right to change the designation."

This text is supported by the authorities cited.

In Shoudy v. Shoudy, supra [55 Cal.App. 344, 203 P. 435], the husband, pending a divorce action, agreed with his wife who was named as beneficiary in his life insurance policies, to keep the policies in effect for her as long as she remained single. After the divorce the husband remarried and changed the name of the beneficiary from that of his divorced wife to his second wife. It appeared from the testimony, among other things, that the husband had said to the wife:

"I have protected you. I have life insurance in the Illinois Bankers' for $4,000, and I am protecting you. If anything happens to me, why, you will have my insurance for the money I owe you."

The decree of divorce made no reference to the insurance policies but contained provision that the allowance for alimony was in full payment for alimony maintenance and support of the minor child made or to be made, and in full settlement of their property rights. The divorced wife brought suit to recover from the second wife who had collected the insurance. The trial court denied the right of recovery. In reversing the judgment the Supreme Court of California said:

"In this view of the instant case it would seem to follow that the equitable

right which the plaintiff herein acquired by virtue of her agreement with Dexter Shoudy was one of which she could not be deprived by any act of the insured in the way of an attempted substitution of the name of a merely voluntary beneficiary in the place and stead of her name in said policies * * *."

■ Appellant's contract with the insured in effect bound him not to change the beneficiary. He assigned the policy, according to the undisputed evidence, for the sole purpose of securing the loan, and for the same purpose, on advice of the insurance agent, he changed the beneficiary. As has been observed, in assigning the policy to the Mercantile Home Bank and Trust Company the insured not only made an absolute assignment but revoked "any nomination of beneficiary under said policy heretofore made." While the assignment and the nomination of a new beneficiary were both absolute in form, they were in fact made, according to the undisputed evidence, for the sole purpose of securing the loan to the bank. Even a deed containing full covenants of warranty, if given to secure a debt will, as between the parties, be held to be a mortgage, and on payment of the debt the equitable title reverts to the original owner and reconveyance may be compelled. The purpose of the change of beneficiary having been accomplished and the loan paid, in equity the original beneficiary should have been restored and this was manifestly the thought of Thomson as shown by his conversation with Austin and McHenry and by his letter written subsequent to the divorce; and equity will consider as done that which should have been done. Crowell v. Northwestern Nat. Life Insurance Co., 140 Iowa 258, 118 N.W. 412; Jordan v. Roden, 6 Cir., 292 F. 573.

■ It is, however, urged that the contract of settlement and the decree of divorce should bar Caroline Thomson from recovering. In this contention we can not agree. Holding, as we do, that she had a vested interest as beneficiary in the insurance policy, it is clear that her right of recovery was not barred by either the contract of settlement or the decree of divorce.

Andrews v. Andrews, 8 Cir., 97 F.2d 485; Shoudy v. Shoudy, supra. It appears from the undisputed evidence that no mention was made of the insurance until after the contract was signed, nor was any mention made of it in the decree. Not only this, but it is clear that the parties did not intend by this contract of settlement to take from Caroline Thomson her interest in the insurance policy. In fact, it appears from the undisputed evidence that her interest in this policy was a part of the consideration for the contract of settlement so that the contract, instead of being a bar, furnished a further support to sustain appellant's claim to a vested right in the proceeds of the policy. In determining the scope or meaning of the contract, the interpretation placed upon it by the parties themselves is entitled to great if not controlling influence. Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 33 S.Ct. 967, 57 L.Ed. 1410.

In view of the conclusions reached by us, it is not deemed necessary to consider the other contentions urged by appellant. The judgment appealed from is reversed and the cause remanded with directions to enter judgment in favor of Caroline Thomson for the proceeds of the policy deposited in court by the Insurance Company.