**CRAIG et al. v. THOMPSON, Collector of Internal Revenue.**

No. 13950.

United States Court of Appeals
Eighth Circuit.

Nov. 4, 1949.

J. Fred Brown, Memphis, Tenn. (Leon B. Catlett, Catlett & Henderson, Little Rock, Ark. and Snowden, Davis, Brown, McCloy & Donelson, Memphis, Tenn., were with him on the brief), for appellants.

Harry Marselli, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack and Rhodes S. Baker, Jr., Special Assistants to the Attorney General, James T. Gooch, United States Attorney, and G. D. Walker, Assistant United States Attorney, Little Rock, Ark., were on the brief), for appellee.

Before WOODROUGH, THOMAS and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

This appeal by the plaintiffs is from a judgment for the defendant Thompson, Collector of Internal Revenue, in a suit in the district court to recover $9,875.74 with interest, representing income tax for the year 1943. The plaintiffs alleged that the tax was illegally and erroneously assessed and collected. The case was tried to the court without a jury.

The appellants are husband and wife. They file joint income tax returns, but the controversy here involves the husband's income only.

Craig is a contractor. He keeps his books and files his income tax returns on an accrual basis. In 1943 he received a payment as compensation for overhaul work performed in 1941, 1942 and 1943, under a contract entered into in 1941.

The ultimate question to be determined is whether under the revenue laws the payment received in 1943 is income in the year it was received or in the years it was earned. The problem calls for a statement of the facts in some detail.

On August 1, 1941, The Republic Mining and Manufacturing Company, a corporation, hereinafter called The Republic, entered into a written contract with Mc-George Contracting Company, a partnership, hereinafter called McGeorge, by the terms of which McGeorge agreed to furnish the equipment and labor and to do the work of removing the overburden on certain bauxite beds on lands owned or leased by The Republic in Saline County, Arkansas.

On August 29, 1941, McGeorge sublet the contract to Craig to furnish the equipment and labor and to do the work of removing such overburden.

The provisions of the contract and of the subcontract, with minor exceptions, were identical. Both contracts provided for fixed compensation by the cubic yard for the removal of the overburden where the average haul from the stripping pit to the dump did not exceed 1500 feet.

The contracts provided that as the work progressed advances on compensation based on a 1500 feet haul would be made to the contractor on or about the first of each month upon estimates made by the engineers of The Republic for work completed in the preceding month.

Both contracts provided that "if on the completion of the contract the average haul exceeds fifteen hundred feet the party of the first part shall pay for the average excess on a basis of extra work * * *"

The paragraph of each contract relating to extra work reads: "Extra work shall be done by the Contractor when directed in writing by the Superintendent of the Company, and all such extra work shall be paid for by the Company on the basis of actual

cost to the Contractor plus ten per cent (10%) thereof; and any such extra work shall be included in the estimate made by the engineers for the preceding month."

Work under the subcontract was commenced in September, 1941, and was continued until May 26, 1943.

No monthly estimates of the average excess haul of more than 1500 feet, hereinafter called overhaul, were made as the work progressed, and Craig kept no records of the cost of moving the overhaul.

After the work had been completed on May 26, 1943, the Chief Engineer of The Republic prepared estimates of the overhaul performed by Craig. He estimated that fair compensation for overhaul on the entire job would be $36,838.04.

The estimate was not based upon cost plus 10 per cent as provided in the contracts of August 1 and August 29, 1941, but was computed with reference to "a going standard price of 1 cent per 100 feet over a stated" distance. The estimate so made by the Chief Engineer was greater than Craig had estimated the amount due for overhaul. He accordingly accepted the Chief Engineer's computation as satisfactory. The Republic then determined as a matter of fairness it would pay said sum to McGeorge. It, therefore, delivered to McGeorge in August, 1943, $36,838.04, which sum McGeorge immediately paid to Craig.

The equipment used by Craig under the contract was rented from H. C. Moran of Pittsburgh, Pennsylvania, to whom an agreed rental was paid during the years 1941, 1942 and 1943. When Craig received the $36,838.04 from McGeorge in August, 1943, he paid to Moran a further sum of $19,380 to compensate for use of the rented equipment on overhaul in 1941, 1942 and 1943.

Since his books of account were kept on an accrual basis, Craig claimed the right to allocate the entire sum of $36,838.04 received for overhaul in 1943 to income in 1941 and 1942. He accordingly applied $14,683.57 of said sum to 1941 income and $22,154.47 to 1942 income, and nothing to income for work performed in 1943. Of the $19,380 paid to Moran as rental for equipment he applied $7,725 to expense for 1941 and $11,655 to expense for 1942. He thereupon filed amendments to his income tax returns for the years 1941 and 1942 in which he included the respective additional sums in gross income and took the sums paid to Moran as deductions. He paid the additional taxes due as shown by the amended returns plus interest from the due dates of the respective returns to the date of payment.

The Commissioner of Internal Revenue disallowed the accruals to gross income and expenses so claimed in the amended returns and allocated the entire amount received for overhaul, less equipment rental paid in 1943, to Craig's gross income for 1943. On this basis the Commissioner assessed against Craig additional income taxes plus interest for 1943 in the sum of $9,875.74, which upon demand of the Collector was paid on May 7, 1947. A claim for refund was filed on May 22, 1947; and after six months had elapsed and the claim had not been allowed this suit was brought to recover the amount so paid with interest.

In substance the appellants contend that the court erred in not holding: 1. That the sum of $36,838.04 received by Craig in 1943 as compensation for overhaul was accruable as income in 1941, 1942 and 1943, the years in which the overhaul was performed; and 2. That the sum of $19,380 paid in 1943 as rental for equipment used to perform overhaul was accruable as an expense deduction in 1941, 1942 and 1943, the years in which the equipment was used.

Craig concedes that the judgment should be modified by deducting from the amount demanded in the complaint the tax due on that proportion of the work performed in 1943.

Appellants' income tax returns were filed pursuant to the provisions of §§ 41 and 42 of the Internal Revenue Code, 26 U.S.C.A. §§ 41 and 42. The law controlling the case is not in dispute. The controversy involves only the application of the law to the facts.

The law is well established that in a suit to recover a tax alleged to have been erroneously exacted the burden is upon the taxpayer to prove the facts establishing the

invalidity of the tax. United States v. Anderson, 269 U.S. 422, 443, 46 S.Ct. 131, 70 L.Ed. 347. And findings of fact by the trial court in a case tried to the court without a jury shall not be set aside on appeal unless clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A.

■ A taxpayer may not allocate "income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount." Security Mills Co. v. Commissioner, 321 U.S. 281, 286–287, 64 S.Ct. 596, 599, 88 L.Ed. 725. And "in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent * * *" or dependent upon future events. Dixie Pine Co. v. Commissioner, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270; Patrick McGuirl, Inc., v. Commissioner, 2 Cir., 74 F.2d 729. It is equally true that a taxpayer on the accrual basis must accrue income in the year in which the amount of the income is reasonably determinable, and the same rule applies to deductions for expenses. Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; United States v. Anderson, supra.

The trial court found that "* * * the contract between the parties specifically provided that overhaul was not to be paid until the completion of the contract"; and the court concluded that the appellants failed to sustain the burden of proof that they had a fixed and determinable right to compensation for overhaul work in 1941 and 1942.

The court did not err in so finding and holding. The contract between The Republic and McGeorge of August 1, 1941, and the subcontract between McGeorge and Craig of August 29, 1941, contained identical provisions in respect of overhaul. Both contracts provided that "if on completion of the contract the average haul exceeds 1500 feet the party of the first part shall pay for the average excess on a basis of extra work."

Under this provision of the contract compensation for overhaul was not due and payable prior to completion of the contract. The language is too clear to require construction. It was so construed by the officers of The Republic and McGeorge and so acted upon by all the parties. No other construction was suggested by any one so far as shown by the record until appellants filed their amended income tax returns of 1941 and 1942. Mr. L. R. Branting, Superintendent of The Republic, called as a witness for appellants, testified that the overhaul could have been estimated and paid monthly, but that "The contract says at the end of the job." Mr. C. Jessup, Chief Engineer of The Republic, who made the final estimate of the overhaul in 1943, testified that he was called to make the computation in 1943. He said: "The contract we started with stated that overhaul would be paid at the termination of the job, and as soon as we accepted the work, I figured out the overhaul."

■ Since appellants now contend that compensation for overhaul was payable monthly their conduct in connection with its performance is important. It has long been the law that "Where the parties proceed in the performance of the contract as though it had a certain meaning and that meaning is not entirely inconsistent with the wording of the contract, it should prevail." Elkan v. Sebastian Bridge Dist., 8 Cir., 291 F. 532, 550; Pitcairn v. American Refrigerator Transit Co., 8 Cir., 101 F.2d 929; Old Colony Trust Co. v. Omaha, 230 U.S. 100, 33 S.Ct. 967, 57 L.Ed. 1410.

■ Apparently appellants have the impression that because compensation for an average haul of 1500 feet and for extra work was payable monthly in amounts based upon estimates of the engineer of The Republic and because it was possible to estimate the amount of overhaul monthly, the right to receive compensation for overhaul accrued monthly also.

Such an assumption, however, is inconsistent with the plain language of the contract. The contract provided that average haul and extra work were to be estimated and paid for monthly as the work progressed, but overhaul was neither to be estimated nor paid for until the contract was completed.

Since by the terms of the contract the obligation of McGeorge to pay and the right of Craig to receive payment for overhaul did not become final and definite in amount until after the completion of the contract in 1943, the court did not err in entering judgment for the Collector and dismissing the complaint.

Affirmed.