## TERRY v. MULLER.
### No. 14,316.

United States Court of Appeals
Eighth Circuit.
July 9, 1951.

Collet, Circuit Judge, dissented.

Coates Lear, Helena, Ark. (Coates & Lear, Helena, Ark., on the brief), (Walter O. Burk, Williston, N. D., of counsel), for appellant.

Joseph P. Stevens, Minot, N. D. (Arley R. Bjella, Williston, on the brief), for appellee.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment in favor of plaintiff (appellee) and against appellant (defendant) for damages on account of the alleged breach of a contract of employment. The parties will be referred to as they were designated in the trial court.

Plaintiff is a man about 45 years of age, a resident of Williams County, North Dakota, and, according to his own testimony, has farmed practically all of his life and is familiar with wheat farming, knows

the types and stages wheat goes through from the time it is planted until it is harvested. In the latter days of May 1948 he purchased a sprayer to be used with a tractor and at the same time purchased fifty gallons of spray chemical intending to spray his wheat fields. In the meantime he heard from his neighbors about airplane spraying and due to the fact that it was getting late in the year and he was unable to use his own sprayer he says: "He went to Grenora for a sprayer on the 7th of June". He there consulted the manager of the Farmers Elevator with reference to securing some one to spray his wheat by airplane. On the following day he purchased fuel to mix with the spray so that it might be used in the airplane sprayer. He testified that: "He went to Grenora a second time (June 14th) to get the pilot because he thought it was the proper time to spray his crop". The manager of the Farmers Elevator telephoned the pilot operating defendant's plane and apparently pursuant to this communication a Mr. Joe Drake, a pilot, landed a spraying plane on the farm of a neighbor. The plane landed at about 7 o'clock in the evening of June 15th and plaintiff and his hired man Charles Riddel drove out some three-quarters of a mile to the place where the plane had landed. Plaintiff did not take Drake over the land to be sprayed but pointed it out to him from his automobile, explaining that he did not want it all sprayed. After pointing out the land he wished sprayed he drove the pilot back to the plane and then loaded his truck with the furnace fuel and drove it to the plane and the liquid spray mixed with the fuel oil was loaded into the spraying plane. The pilot did not inspect the field nor was he asked to do so. At the time the spraying was done plaintiff's wheat was from 6 to 10 inches high but it had not started to head out but was in the "box stage". The plaintiff testified that "by the box stage he means first there is the little plant and the next stage is the shooting stage when it starts shooting the stem up, then it forms into a box for the head and then heads out". There was no conversation between Drake and the plaintiff with reference to the

stage, height or condition of the wheat. Joe Drake the pilot was a resident of North Carolina, he was an expert airplane pilot. He had never been a wheat farmer, knew nothing about it, did not know what stage the wheat was in at the time he sprayed it and if he had seen it he would not have known. He testified "that he sprayed the crop when plaintiff requested it to be sprayed and he did not inspect the crop, he was not asked to inspect it". There is no evidence that the defendant through Drake, or anyone else, made any representations with reference to any superior knowledge as to the proper time or the proper stage of growth at which spraying should be done. There was evidence from which the jury might have found the wheat was damaged because of the application of the spray at the time when it was applied. At the close of all the evidence defendant interposed a motion for a directed verdict which motion challenged the sufficiency of the evidence to prove the material allegations of plaintiff's complaint and to prove any negligence on the part of defendant in performing his contract, if there was such a contract. The motion also challenged the sufficiency of the evidence to prove that Joe Drake was the agent of defendant. The motion was overruled and the case submitted to the jury. The jury returned a verdict in favor of plaintiff for $2,750.00 on which judgment was subsequently entered. Following the entry of judgment the defendant interposed a motion for judgment notwithstanding the verdict which the court likewise overruled and this appeal followed.

While defendant on this appeal, as in his motion for a directed verdict, contends that the evidence was insufficient to prove that Joe Drake, the pilot who operated the airplane, was defendant's agent and also urges that the court was without jurisdiction, we find these contentions without merit and put them aside without further consideration.

In considering the question of the sufficiency of the evidence we must view the evidence in a light most favorable to the prevailing party, in this case the plaintiff. If when so considered it can be said

that there is substantial evidence then the case should have been submitted to the jury. A mere scintilla of evidence however is not sufficient. Where fairminded men may honestly draw different conclusions from the evidence, the question of liability becomes one of fact. Ordinarily where the evidence is undisputed and is such that fair-minded men cannot reasonably reach different conclusions or inferences, the question of liability is one of law to be determined by the court. In the instant case there is no conflict in the testimony on any material issue.

■ This action did not sound in tort but was an action for damages for an alleged breach of contract, it being claimed that the contract was inefficiently performed. It is therefore necessary to consider the obligations arising because of the contract between the parties, because in the obligation assumed by a party to a contract is to be found his duty, and his failure to comply with such duty constitutes the breach. It is elementary that the cardinal rule in the construction of contracts is to determine the intent of the parties. Where the contract is in writing this must usually be determined by the words of the contract. Here there was no written contract and it must be determined to a large extent by the surrounding circumstances, the acts of the parties and how the parties themselves construed or interpreted it. There was no claim of fraud or misrepresentation of any kind.

There were at least two methods by which these grain fields could have been sprayed. Plaintiff, prior to any contact with the defendant or his representative, planned to do his own spraying and for that purpose purchased a sprayer and also the liquid for use. As has already been recited he was a wheat farmer of many years experience, he knew all about the various stages of the growth and development of wheat.[1] He was certainly relying upon his own knowledge and judgment when he was proposing to apply the spray himself. The other method of spraying was by use of the airplane. The effect of the application of the spray was the same whether applied from an airplane or from the ground sprayer. Plaintiff testified that he abandoned his plan to spray his own fields because "I didn't have a tractor to hook it up", and he then through an intermediary contacted defendant through his agent Drake. He purchased and mixed his own spray and he determined the time of its application. When Drake landed his plane on a neighbor's farm plaintiff and his hired man went to the plane and that was the first time the parties met. He did not advise Drake as to the stage of growth of his wheat, which confessedly he knew. Drake was a mechanic, not a chemist, a botanist nor an agronomist. He gave no advice, made no representations to plaintiff with reference to the proper time for spraying and plaintiff asked no questions touching that subject. He simply expedited the process of spraying by substituting an airplane sprayer for the tractor propelled sprayer. Manifestly plaintiff was not induced to invite Drake to spray his field at the time he did by any act or representation of Drake. Plaintiff not only did not ask Drake to inspect the field, but in fact he gave him no opportunity to do so and he knew that Drake did not know the stage of the wheat. He drove Drake out in an automobile far enough so that he could point out the field or fields which he desired sprayed. This certainly did not indicate that plaintiff was relying upon Drake's judgment as to when the spraying should be done and we think it clear that Drake had a right to assume that plaintiff knew when this spraying could be safely done. Not only is there nothing to indicate that plaintiff was relying upon Drake's

1. Plaintiff testified: "My wheat had not started to head out but was in the box stage. By the box stage I mean—first there is the little plant and the next stage is the shooting stage when it starts shooting the stem up, then it forms into a box for the head and then heads out * * * I have farmed practically all of my life and am familiar with wheat farming and know the types and stages wheat goes through from the time it is planted up till it is harvested".

judgment on this matter, but the attending circumstances and acts of the parties show conclusively that he was relying upon his own judgment. There is nothing whatever to indicate that plaintiff thought this any part of the defendant's duty under the contract of employment. The action of the parties during the time of the performance of this contract indicated what they thought of its scope and meaning and their conduct is of great, if not controlling, influence in ascertaining their understanding of the scope and terms of the contract. It may generally be assumed, in the absence of fraud or misrepresentation, that parties to a contract know best what was meant by its terms and they are the least likely to be mistaken as to its intention, and whatever is done by the parties during the period of performance of the contract is presumed to be done under the terms of the contract as they understood and intended it to be. In the article on Contracts, 12 Am.Jur. section 249, the author among other things says: "* * * Parties are far less likely to have been mistaken as to the meaning of their contract during the period when they are in harmony and practical interpretation reflects that meaning, than when subsequent differences have impelled them to resort to law and one of them then seeks an interpretation at variance with their practical interpretation of its provisions * * *."

To the same effect see: Thomson v. Thomson, 8 Cir., 156 F.2d 581, 586, and Craig v. Thompson, 8 Cir., 177 F.2d 457, 460.

In Thomson v. Thomson, supra, we said: "In determining the scope or meaning of the contract, the interpretation placed upon it by the parties themselves is entitled to great if not controlling influence."

■ In Craig v. Thompson, supra, it is said: "Since appellants now contend that compensation for overhaul was payable monthly their conduct in connection with its performance is important. It has long been the law that 'Where the parties proceed in the performance of the contract as though it had a certain meaning and that meaning is not entirely inconsistent with the wording of the contract, it should prevail," (Citing authorities.)

■ The evidence, as we have said, is not in dispute. The parties by their contract, as made, interpreted and carried out by them, did not impose upon defendant the duty of determining and advising plaintiff when his grain should be sprayed. Plaintiff alone knew the stage of development or growth of his wheat and he, and he alone, determined the time it was sprayed, and the only complaint was that defendant sprayed the wheat at the wrong time. Apparently wheat fields in that vicinity were then generally being sprayed. The elementary principle that one may not make his own voluntary act or conduct the ground of recovering damages from another is expressed in the maxim "volenti non fit injuria". We think there was not a scintilla of evidence sustaining the contention that defendant was responsible for the time at which the spraying was done.

We conclude that the Court should have granted defendant's motion for a directed verdict and, having failed so to do, should have granted his motion for judgment in accordance with his motion for a directed verdict.

The judgment appealed from is therefore reversed and the cause remanded with direction to enter judgment dismissing the action.

COLLET, Circuit Judge (dissenting).

I cannot agree with the majority that the evidence was insufficient to submit the issue of the negligent performance of the contract of employment to the jury. In reaching that conclusion I accept the conclusion of the trial court that there was adequate evidence to support the jury's finding that Mr. Drake, who did the spraying, was acting as the agent of the defendant Terry. Since Drake should, therefore, for purposes of this case, be treated as the agent of the defendant, the defendant was under the obligation to impart to his agent any information which he had, which a reasonably prudent person would pass on to an agent, concerning the proper practice to follow in carrying out the business of spraying. It seems to me that the follow-

ing facts justify the submission of the issue of negligence to the jury.

Plaintiff, a farmer, lived on a farm in Williams County, North Dakota. In May, 1948, he decided to spray his growing wheat crop for the purpose of killing the weeds in the wheat. He had heard of the use of a spray called "2,4-D", or "Weed-No-More", for that purpose. On May 25, 1948, he purchased 50 gallons of that chemical and a sprayer designed to be used with a tractor, for the purpose of doing the spraying himself. He had never before used this or any other kind of spray for this purpose. He found after purchasing the ground sprayer and the spray that a tractor was not available to pull the ground sprayer, and since it was "getting late" to spray, he "figured" that he had better get the spraying done by plane. He had never had spraying done by plane, but he had heard that such was an effective and satisfactory way of doing it. On May 25 he had heard of the defendant Terry. On June 7, 1948, he went to the Farmers' Elevator at Grenora, North Dakota, where he had purchased the spray, and left an order there with Mr. Dash Comfort, who had been making arrangements for spraying by plane as an accommodation to the farmers and also the sprayers, for a plane to come and spray his wheat fields. The next day he purchased the quantity of fuel oil recommended by Mr. Comfort to be mixed with the chemical for spraying by plane. The plane not having arrived by the 14th, plaintiff went back to Mr. Comfort and renewed the request for a plane. On the evening of June 15, about 7:00 o'clock, Mr. Terry's plane arrived and landed on an adjoining farm. Seeing it land, plaintiff went in his automobile to meet the plane. He took the pilot, Mr. Drake, back to his farm in his car and showed Mr. Drake the fields that were to be sprayed. He did not know Drake and Drake did not know him. Plaintiff did not know how experienced in spraying wheat with "2,4-D" Drake was, and Drake had no knowledge of plaintiff's experience. It developed at the trial that Drake had been engaged in the business for several years and had sprayed many thousand acres of wheat

with "2,4-D", and that Terry had more than twenty planes located in North Dakota doing this kind of work at the time. Plaintiff assumed Drake knew all about how and when to spray wheat with this chemical. Plaintiff did not know that the spraying of wheat with this chemical at a certain stage of its growth had been found by experimentation to be very injurious and that bulletins had been issued by the manufacturers and by the state agricultural authorities of North Dakota warning against its use at that stage, described as the "jointing" or "box" stage. Drake and Terry both knew of those warnings. Drake did not examine the wheat pointed out to him by plaintiff from the automobile to see what stage it was in. He says he was not a wheat farmer and would not have known if he had looked. Neither did he ask plaintiff what stage the wheat was in or tell him that it should not be sprayed when at the jointing or box stage. Each apparently assumed that the other knew what he was doing, asked no questions to determine the other's knowledge, and, it is reasonable to assume, relied on the other's knowledge. The chemical was mixed with the oil at Drake's plane, Drake approving the mixture recommended by Mr. Comfort. The mixture was loaded into the plane and the spraying immediately done. A few days later plaintiff discovered that the wheat sprayed had a dead brownish-black color. When it was harvested, the yield for the 150 acres sprayed was approximately four to five bushels per acre, while the remainder of plaintiff's land, seeded under similar circumstances, had a yield of from 12 to 18 bushels per acre.

It seems to me that the serious question concerning the sufficiency of the evidence is whether there was adequate evidence of Drake's negligence in not examining the wheat to determine whether it was in the stage when he knew, or should have known, it should not be sprayed. The trial court submitted that question to the jury after instructing the jury what would constitute negligence under the circumstances; i. e., whether a reasonably careful and prudent person, possessing the knowledge which the evidence showed Drake possessed, in the

exercise of reasonable care would have examined the wheat or made inquiry concerning its stage of growth. It should, of course, be borne in mind that we must, and do, accept as true the facts and reasonable inferences therefrom which are most favorable to the jury's conclusion. And we should relegate to the jury the right to reject Drake's statement that he would not have known what stage the wheat was in had he examined it, and hold him possessed of the knowledge which the jury had a right to conclude he had from his admitted long and extensive experience in this line of work. It is patent from the verdict that the jury did find that Drake knew, and plaintiff did not, that wheat should not be sprayed at a certain stage. There is also adequate evidence that the spraying of the wheat at its then stage was the cause of plaintiff's loss in yield. The trial court submitted that question to the jury and there was no complaint of the form of the instruction. The problem resolves itself, therefore, into the question of whether reasonable minds may honestly differ as to whether a reasonably prudent person would, under the circumstances of this case, have examined the wheat. The position taken by defendant at the trial that plaintiff fixed the time for spraying by asking that it be done when it was done, that he was a wheat farmer and could and should be presumed to know when his wheat could safely have been sprayed, and therefore should not now be heard to say that defendant was negligent in not examining the wheat and telling him that it should not then be sprayed, is an appealing position. The jury might well have accepted it. But still, that does not answer the question of whether reasonable minds might honestly differ as to whether a reasonably prudent person, experienced in this business, knowing that there was a stage at which wheat should not be sprayed, and having due regard for doing a good job, would have taken some action designed to ascertain whether it would be injurious to the wheat to spray it at that time. This court said in Walkup v. Bardsley, 8 Cir., 111 F.2d 789, loc. cit. 791: "It is only where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no doubt what the fact is, that the court should direct a verdict. (Citing cases.) The question of negligence is usually one of fact for the jury. It is only where the facts are such that *all reasonable men* must draw the same conclusion from them that the question of negligence becomes one of law for the court. (Citing cases.)" (Italics ours.)

I am unable to reach the conclusion that all reasonable men must conclude from the evidence in this case that Mr. Drake was not negligent in failing to ascertain whether the wheat was in the stage when he knew or should have known it should not have been sprayed. The question of his negligence was therefore, in my opinion, one for the jury.

I find no error which in my judgment would justify the reversal, and therefore I would affirm the judgment.